STATE of Missouri, Respondent,

v.

Phillip Lee HARVEY, a/k/a James Kirkland, Appellant.

No. 54461.

Supreme Court of Missouri, Division No. 2.

Jan. 12, 1970.

John C. Danforth, Atty. Gen., Michael L. Boicourt, Asst. Atty. Gen., Jefferson City, for respondent.

J. Arnot Hill, The Legal Aid and Defender Society of Greater Kansas City, for appellant.

MORGAN, Judge.

The jury found defendant guilty of robbery in the first degree and sentenced him to a term of eight years in the penitentiary. Defendant has appealed.

It was established that on November 29, 1967, three men, armed with at least one sawed-off shotgun, entered a clothing store in Kansas City, forced a clerk to lie on the floor, and stole a number of coats. The state charges defendant with being one of the three. Defendant sought to establish an alibi that he was in Omaha, Nebraska, on the date of the crime.

Although defendant had self-employed counsel at the trial, he is represented on appeal by The Legal Aid and Defender Society of Greater Kansas City. Two alleged trial errors have been presented.

First, argument is made that the trial court erred in permitting the prosecuting attorney to cross-examine and impeach a state's witness. That witness was the sixteen year old clerk who had been ordered to lie on the floor. Four days after the robbery, he had signed a statement wherein defendant was identified as one of the participants, and he had testified to this fact at a previous trial which apparently resulted in a "hung jury." When offered, for the second time, as a witness for the state, the following occurred:

Q   Where were the three men when you first observed them?

A   They were coming around one of the counters.

Q   Did you hear these men say anything?

A   This is a holdup; lay on the floor.
    *    *·    *    *    *    *

Q   Did you have a good opportunity to observe them?

A   Not too good.

Q   Did you see them, though?

A   Yes.

Q   Can you identify anybody in this courtroom as being one of the men who held up Matlaw's on November 29, 1967?

A   I can't say for sure.
    *    *    *    *    *    *

Q   I am asking you again   .   .   .   look about the courtroom, and ask you if you can identify as being in the courtroom any one of those men you saw participate in this robbery on November 29, 1967?

A   I still can't say.
    *    *    *    *    *    *

The prosecuting attorney reminded the witness of his testimony at the previous trial, and then had the pre-trial "statement" marked as an exhibit. Over objection of defense counsel, the questioning continued.

Q I want you to read the sentence that begins "I recognize" on this exhibit I to the jury please.

A "I recognize Phillip Harvey as one of the three men that I saw carrying coats."

\* \* \* \* \* \*

Q Would you read it again, please, the statement?

A "I recognize Phillip Harvey as one of the three men that I saw carrying coats from a display rack as he went out the front door after the holdup. He is also one I saw armed with the sawed-off shotgun during this holdup."

Q And that statement was true at the time you made it \* \* \*?

A Yes.

Q And it is true today, isn't it \* \* \*?

A Yes.

\* \* \* \* \* \*

Q Let me ask you again \* \* \* is this man in the yellow shirt in the courtroom Phillip Harvey?

A Yes, Sir.

Q Is that the man you were talking about when you made that statement to the police?

A Yes, Sir.

Q \* \* \* why is it, or is there \* \* some explanation why you didn't identify Mr. Harvey today?

A For one thing he was dressed different.

\* \* \* \* \* \*

Q Now I am going to ask you \* \* \* to give us your best judgment is this defendant, Phillip Lee Harvey one of the men that robbed Matlaw's?

A Yes.

The defendant's present argument that the preceding direct examination was, in fact, an improper cross-examination and impeachment of the witness was not submitted to the trial court in defendant's motion for a new trial. Although not properly preserved for review, we are asked to consider the merits of the argument under the "plain error" rule. Criminal Rule 27.20(c) V.A.M.R. Being presented in this posture, the question is not whether the manner of interrogating the witness violated any established rule of law on the subject, but whether or not the procedure followed affected a substantial right of the defendant and resulted in a miscarriage of justice. Periodically, this court has considered what a prosecuting attorney can and can not do when a witness offered by him does not testify as anticipated. State v. Patton, 255 Mo. 245, 164 S.W. 223; State v. Bowen, 263 Mo. 279, 172 S.W. 367; State v. Gregory, 339 Mo. 133, 96 S.W.2d 47; State v. Palmer, Mo., 306 S.W.2d 441; State v. Kinne, Mo., 372 S.W.2d 62; State v. Gordon, Mo., 391 S.W.2d 346. As established by the cases cited, the latitude granted a prosecuting attorney to encourage that testimony expected or to challenge that actually given may depend on how the witness is characterized. The possibilities range from that of the reluctant witness (be he shy, scared or unwilling) to that witness who surprisingly gives affirmative testimony, contrary to that previously suggested by him, which aids the adversary. See Randazzo v. United States (8th Cir.) 300 F. 794.

■ How this particular witness might be classified is unimportant, for, in any event, it was improper for the extra-judicial statement to be read to the jury. The reasons often given for justifying this conclusion are that "the contradiction of such a witness is the destruction of a straw man erected by the party himself (the state), for its effect upon the jury" or "if it did not open up the floodgate for the admission of hearsay evidence,

would go much too far in that direction," State v. Bowen, supra, but the more fundamental reason is that it sets the stage for possibly denying a defendant his right to confront the witness against him in violation of the Sixth Amendment to the United States Constitution. Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923; Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934. However, the problem remains as to whether or not, under the facts of this case, the impropriety not only violated this procedural rule but also infringed on the reason for it to such an extent that a manifest injustice did occur. We are convinced it did not. As shown by his testimony, the witness immediately confirmed his prior statement *without any deviation therefrom*, and in view of this, the portion read from the written statement added nothing to the independent in-court testimony, and in no way denied defendant's right of confrontation.

■ Second, it is contended that the trial court erred in permitting the prosecuting attorney to cross-examine defendant concerning matters not mentioned in his direct examination in violation of Section 546.260, V.A.M.S. The record reflects, relative to this assignment, that defendant testified he was in Omaha, Nebraska, on the date of the offense, and that he had only returned to Kansas City the day of his arrest on December 2, 1967. His mother, sister and girl friend all testfied they on different occasions, had talked with defendant by phone while he was in Omaha during the time in question. Apparently, at the previous trial defendant had testified that while in Omaha he had applied for work at the Nebraska State Employment Service. In expectation of the same testimony, the state had available that person having control of such records in Omaha. At the trial being reviewed, defendant did not mention during direct examination the filing of an application for employment. However, when the prosecuting attorney asked if he had, defendant testified to making the application. In rebuttal, the state offered the record keeper who testified no such application had been made. As declared in State v. Scown, Mo., 312 S.W.2d 782, 786: "While our statute attempted to fix the limits of cross-examination and the extent of a defendant's waiver of immunity, neither it nor the many adjudicated cases give us any yardstick by which we can accurately measure the breadth of a cross-examination and tell clearly whether its proper scope has been infringed. It is probably impossible to lay down any definite rule. Each case is very much dependent upon its own facts and background." Again, in State v. McKissic, Mo., 358 S.W. 2d 1, 6, it was held that, " * * * it is sufficient to say that when a defendant exercises his right to testify and enters a 'sweeping denial' to the charge, the state is not confined to a mere categorical review or reiteration of the matters covered on direct examination but may cross-examine as to 'all matters within the purview of the direct examination.' " (Citing cases.)

In the instant case, defendant's alibi was all bottomed on the fact that he was in Omaha at the time. We know of no authority, nor has any been cited, declaring that an alibi defense is immune from attack. The defendant in direct examination told of his absence from Kansas City and his activities while in Omaha. Certainly, inquiries directed toward destroying that alibi had to involve an effort by the state to convince the jury defendant was in Kansas City and not Omaha. Questions tending to show defendant had not been in Omaha on the date of the crime were clearly within "the fair purview" of the direct examination.

Finding no reversible error, the judgment is affirmed.

All of the Judges concur.